IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

|  |  |
|---|---|
| DAVID FIDDLER, | No.  CIV 05-088-TUC-JMR (BPV) |
| Plaintiff, | |
| vs. | **REPORT AND RECOMMENDATION** |
| JOANNE B. BARNHART, Commissioner of Social Security Defendant. | |

Plaintiff filed this action for review of the final decision of the Commissioner of Social Security pursuant to 42 U.S.C. § 405(g). This Social Security Appeal has been referred to the Unites States Magistrate Judge pursuant to the Rules of Practice of this Court.

Plaintiff's "Motion for Summary Judgment" (Document # 8), Defendant's "Cross-Motion and Memorandum in Support of Motion for Summary Judgment and in Opposition to Plaintiff's Motion for Summary Judgment" (Document # 16), Plaintiff's "Motion and Memorandum in Opposition to Defendant's Cross-Motion for Summary Judgment and Defendant's Opposition to Plaintiff's Motion for Summary Judgment" (Document # 19), and Defendant's "Reply in Opposition" (Document # 23) are before the Court.  For the following reasons, the Magistrate Judge recommends that the Plaintiff's Motion for Summary Judgment be GRANTED and Defendant's Cross Motion for Summary Judgment be DENIED.

//

//

//

1    **I.    PROCEDURAL HISTORY**

2    The Plaintiff, David Paul Fiddler, filed an application for Social Security Disability

3    Benefits on August 1, 2002.  (Transcript of the Record "TR," 88.)  Plaintiff alleged a

4    disability onset date of November 15, 1998. (Id.)  Plaintiff had previously filed applications

5    for disability benefits in November, 1999, and February, 2000. (TR 85, 23.) Plaintiff's claim

6    was denied initially (TR 43), and on reconsideration (TR 44).  Plaintiff requested a hearing

7    before an Administrative Law Judge ("ALJ").  (TR 65.)  ALJ Peter J. Baum held a hearing

8    on October 27, 2003, and Plaintiff, who was represented by counsel, testified at the hearing.

9    (TR 376-403.)   Additionally, Ruth Van Vleet, a vocational expert, testified at the hearing.

10   (Id.)

11   On January 16, 2004, the ALJ issued a decision finding that Plaintiff was not disabled.

12   (TR 23-29.)    The ALJ found that the evidence confirmed the following medically

13   determinable impairments: alcohol abuse, status post lobectomy, secondary to emphysema;

14   status post right carpal tunnel syndrome; status post C6 fracture; and depression.  (TR 24.)

15   The ALJ found that these impairments were severe.  (TR 24, 28.)  The ALJ found that

16   Plaintiff's allegations regarding his limitations to be not totally credible, finding it

17   particularly significant that Plaintiff admitted under oath that he last drank on April 16, 2003,

18   on his birthday, in contrast to "undisputed clinical notes" indicating that he was still drinking

19   occasionally on July 1, 2003. (TR 26, 28.) The ALJ further found that the medical evidence

20   established that the Plaintiff met the criteria of listing 12.09B in Appendix 1 to Part 404, 20

21   C.F.R. Chapter III.  (TR 26, 28.)  Specifically, his repeated abuse of alcohol resulted in

22   moderate restrictions in daily living activities and social functioning, and marked difficulties

23   in maintaining concentration, persistence or pace and repeated episodes of decompensation.

24   (TR 26.)  Thus, the ALJ found that his ongoing abuse of alcohol was a contributing factor

25   material to the determination that Plaintiff was disabled, thereby making him nonentitled and

26   ineligible to receive disability benefits.  (TR 26, 28.)

27   The ALJ then proceeded to evaluate Plaintiff's residual functional capacity ("RFC")

28   without alcohol use.  (Id.)  When not abusing alcohol, the ALJ found that Plaintiff had the

RFC to perform the demands of light work with some limitations, and no mental impairments, but could not perform his past relevant work. (TR 26-27, 28.)  The ALJ found Plaintiff to be an individual closely approaching advanced age, with a high school or equivalent education, and with no transferable skills from semi-skilled work previously performed.  (TR 27, 28.)  Given these limitations, the ALJ relied on the vocational expert's testimony and found that Plaintiff could make a vocational adjustment to other work, specifically work as a home care attendant as actually performed in Arizona, with 6,600 such jobs in Arizona.  (Id.)  Accordingly, the ALJ found Plaintiff was not under a disability as defined in the Social Security Act at any time through the date of the decision.  (TR 27, 29.)

Plaintiff requested review of the ALJ's decision, and the Appeals Council denied review on January 27, 2005, making the ALJ's decision the final decision of the Commissioner.  (TR 6-8.)  The Appeals Council received into evidence Exhibit AC-1, correspondence from Plaintiff's attorney to the Appeals Council, dated September 10, 2004, with Exhibits 1 and 2 attached.  (TR 9, 352-375.)

This appeal was brought in the United States District Court on February 4, 2005. Plaintiff brings this action to obtain a judicial review of the Commissioner's decision.

## II.   THE COMMISSIONER'S DECISION AND EVIDENCE PRESENTED

ALJ Peter J. Baum held a hearing on October 27, 2003.  (TR at 376-403.)  Plaintiff, who was represented by counsel, testified at the hearing.  Additionally, Ruth Van Vleet, a vocational expert, testified at the hearing.  (Id.)  Exhibits 1A-4A, 1B to 11B, 1D to 3D, 1E to 14E, and 1F to 16F were admitted at the hearing.  (TR at 379-80.)  Subsequent to the hearing, Exhibit 17, medical records from Dr. Yarne, were admitted.  (TR 324-351.)

### A.   Plaintiff's Testimony

Plaintiff was born April 16, 1950; reached the tenth grade in school, and thereafter obtained a GED.  (TR 381-82.) Since November 15, 1998, Plaintiff attempted to work in maintenance part time, but it didn't work out.  (TR 382.) Plaintiff also worked part time as a home assistant, making sure his girlfriend received the correct dosage of insulin.  (Id.)  He quit the work doing maintenance because "by the time I had four hours in I was hurting so

1    bad they would let me go home and rest until the next day." (TR 383.)  After that, he worked

2    as a parcel sorter four hours a day for three months.  (Id.)  Of those four hours, he was on his

3    feet for three hours.  That job ended when they closed the company down.  (Id.)  The only

4    trouble he had with that job was with his breathing, but his employers gave him a break on

5    that.  (Id.)  Plaintiff didn't know if he were offered that job on a full time basis if he would

6    have been capable of performing it due to his breathing and pains in his chest and back.  (TR

7    384.)

8         Plaintiff testified that he lived in an apartment with his daughter and her four children,

9    and watched her two year old son while she was working, although he couldn't pick him up,

10   and didn't take him to the park because his daughter was afraid he would over-exert himself

11   and not be able to make it back.  (TR 384-85.)  Plaintiff testified that his commercial drivers

12   license expired in 1992, and that he no longer drove.  (TR 386-87.)

13        Plaintiff testified that he no longer drank, and the last time he had any alcohol was his

14   birthday, that same year [2003].  (TR 387.)  Plaintiff testified that Dr. Yarne had put him on

15   medication which helped him to not drink, and that he had not had any alcohol at all since

16   April 2003.  (Id.)

17        Plaintiff testified that he worked in the past as a presser, which involved assembling

18   shutters, and required at times lifting up to 75 pounds.  (TR 390-91.)  Plaintiff also worked

19   as a gas station manager for about eight months, and a motel manager for about six months.

20   (TR 391-92.)   The gas station job was a full service and repair job, and the motel job

21   involved maintenance and housekeeping.  (TR 392-93.)  Plaintiff worked at a mobile home

22   park where he mostly trimmed trees.  (TR 393.)

23        Plaintiff testified that his breathing problems are brought on by dust and fumes.  (TR

24   393.)  Plaintiff, right handed, had surgery on his right forearm for carpal tunnel.  (TR 393.)

25    Plaintiff still has trouble with his hands going numb and cramping at times.  (TR 394.)

26        Plaintiff testified that he has trouble with car repairs, which he likes to do, because he

27   has trouble concentrating and putting things back together in the correct order.  (TR 394.)

28

1    Ruth Van Vleet testified as a vocational expert.  (TR 397.)  Ms. Van Vleet testified

2   that she did not require any further information about Plaintiff's past work in terms of the

3   exertion and skill levels as defined by the Social Security Administration, and adjusted the

4   exertion and skill levels in accordance with Plaintiff's testimony at the hearing.  (TR 396-99.)

5    The ALJ posed the following hypothetical: "I would like you to assume that we're

6   discussing a gentleman who as of his alleged onset date was 48 years of age.  He is not 53

7   years of age.  Assume that he had finished the tenth grade and then got a GED certificate.

8   He has the work history that we just discussed.  Assume for the purpose of this first

9   hypothetical that he is limited to a light level of exertion as that term is defined by the Social

10   Security Administration. In addition to that exertional limitation, he must avoid concentrated

11   exposure to extreme cold and heat.  He must avoid even moderate exposure to fumes, dust

12   and odors, gasses, poor ventilation etc.  He must avoid all exposure to hazardous machinery

13   and unprotected heights.  At a light level of exertion with those environmental limitations do

14   jobs exist in the regional or national economy, which this gentleman could sustain?  Either

15   at an unskilled level or using any of the skills he may have acquired in his work as a gas

16   station manager, an apartment, excuse me, a motel manager or the other jobs that we

17   discussed here today?"  (TR 399.)

18    The vocational expert identified a category of home attendant companion jobs,

19   performed at the lighter category, considered semiskilled, and, opined that, as the job is

20   actually performed in Arizona, a person of the age, education, work background, and

21   limitations as posed in the hypothetical could sustain the work.  (TR 401.)  Mild limitations

22   in social functioning would not preclude this type of work.  (Id.)

23    The ALJ deferred asking Ms. Van Vleet about limitations from Dr. Yarne, as it was

24   clear to the ALJ that if the hypothetical were to also include such limitations as frequent

25   deficiencies of concentration, persistence and pace, resulting in failure to complete tasks in

26   a timely manner and repeated episodic deterioration or decompensation in work or work like

27   settings, that he could not sustain the job mentioned.  (Id.)  The ALJ left the record open in

28

order to allow Plaintiff to supplement the record with further records from Dr. Yarne.  (TR 380.)

**B.    Medical Evidence**

1.    Physical Impairment

Plaintiff was admitted to Grossmont Hospital, in La Mesa, California, on October 10, 1998, for a fourteen day stay.  (TR 191.)  His chief complaint on admission was a chronic cough, considered to be a left lower lobe lung abscess.  (TR 191, 208, 218.)  Plaintiff admitted that prior to the admission, his girlfriend had tried to kill him with an overdose of insulin.  (Id.)  Doctors at the hospital performed a left lower lobectomy, and Plaintiff was followed over seven days for a moderate air leak until the air leak stopped.  (Id.)  At that time his lungs showed completed expansion, and he was discharged to home.  (Id.)  Plaintiff's history noted that Plaintiff was a smoker and was also known to abuse alcohol.  (Id.)

Approximately one year later, November 1, 1999, Plaintiff reported numbness in the left side of his chest.  (TR 232.)  A radiology report completed on January 15, 2000, indicated chronic obstructive pulmonary disease, but no pneumonia or heart failure.  (TR 238.)

On January 15, 2000, Plaintiff underwent an internal medicine evaluation by Dr. Babak Pezeshki, M.D.  (TR 239.)  Dr. Pezeshki noted nothing positive on his examination for carpal tunnel.  (TR 242.)  Dr. Pezeshki opined that the abnormal sensation that Plaintiff feels in his chest might be associated with scarring or possible changes in the superficial nerves in his left chest, but noted that his lungs seem to have compensated well and that Plaintiff has reasonable breath sounds in both sides.  (Id.)  Dr. Pezeshki noted that the abnormal sensation was chronic, but did not usually lead to any changes in lifestyle, and did not see any limitations in Plaintiff as far as standing, walking, or sitting, and that Plaintiff should be able to lift and carry weight without postural, manipulative or other relative limitations.  (Id.)

Dr. Enrique Suarez completed a consultative exam on November 13, 2002, noting the following limitations: Plaintiff could occasionally lift 20 pounds, and frequently lift 10

pounds; and Plaintiff could stand and/or walk about 6 hours in an 8-hour workday, and sit for 6 hours of an 8-hour workday.  (TR 284-85.)  Breaks and lunch periods would not provide sufficient relief for alternating sitting and standing.  (TR 285.)  Plaintiff could occasionally climb, balance, stoop, kneel, crouch and crawl, and was unlimited in his ability to reach, handle, finger, feel, see, hear and speak.  Dr. Suarez noted no environmental restrictions.  (Id.)

Dr. Suarez noted in his report that Plaintiff has chronic obstructive pulmonary emphysema, with no significant shortness of breath on moderate exercise and with a moderate obstruction by spirometry tests. (TR 292.)  Dr. Suarez also noted that Plaintiff had a significant history of a nicotine addiction.  (Id.)  Dr. Suarez noted a cyst in the left upper extremity, but no significant problem.  (Id.)  Dr. Suarez noted carpal tunnel syndrome and a fractured C6, both with mild symptomatology.  (Id.)  Dr. Suarez noted Plaintiff's history of depression, and also noted that as of March he was on no medication, did not see any psychiatrist for follow up, and at that point, appeared to be "pretty much compensated." (Id.) At the time of the interview, Plaintiff reported drinking "occasional beers."  (TR 291.)

A Physical Residual Functional Capacity Assessment ("PRFCA") was completed by a medical consultant on December 2, 2002.  (TR 295.)  The PRFCA revealed exertional limitations as follows: Occasional lifting of 20 pounds, frequent lifting of 10 pounds, standing and/or walking about 6 hours in a 8-hour workday, sitting about 6 hours in a 8-hour workday, and unlimited pushing and/or pulling (Id.)  The PRFCA noted some postural limitations with climbing, crouching and crawling.  (TR 296.)  The PRFCA noted no manipulative, visual limitations, or communicative limitations, but did note some environmental limitations regarding avoidance of exposure to extreme cold and heat, and fumes and hazards.  (TR 297-98.)

2.   Mental Impairment

Jaga Nath Glassman, a psychiatrist in California, submitted a Psychiatric Disability Evaluation on February 7, 2000. (TR 243.) The information in the report was obtained from an interview with the Plaintiff and from a review of Plaintiff's medical records sent to him

1   by the Disability Evaluation Division.  (Id.)  Dr. Glassman noted that Plaintiff reported only

2   physical problems at their meeting, and denied being significantly depressed or anxious.  (TR

3   244.)  Plaintiff reported to Dr. Glassman that he drinks every day, two large  beers.  (TR

4   245.)  Plaintiff stated that his drinking used to be real heavy and he had DUI's about twenty

5   years ago.  (Id.)  Dr. Glassman concluded in his report that Plaintiff was not disabled from

6   a psychiatric perspective.  (TR 246.)  His formal Axis I diagnosis was Pain Disorder with

7   Physical and Probable Psychological Factors; Alcohol Abuse."  (Id.)

8        A Psychiatric Review Technique was completed on February 10, 2002, by Dr. Giraldi.

9   Dr. Giraldi's diagnosis was of an impairment, not severe, category 12.08, substance addiction

10   disorder, with only slight degrees of functional limitations.  (TR 250, 257.)

11        On March 23, 2002, Plaintiff was admitted to Palo Verde Mental Health Services for

12   severe depression with alcohol abuse after an attempted suicide by insulin overdose in

13   response to his girlfriend's recent death due to medical complications.  (TR 262, 266, 267.)

14   Plaintiff admitted at least daily use of alcohol at the time.  (TR 268.)  Plaintiff was diagnosed

15   by Dr. Alfredo Ramirez with major depressive disorder, severe, and alcohol abuse, and was

16   prescribed Zoloft as an antidepressant.  (TR 270.)  Plaintiff was discharged with instructions

17   to avoid alcohol and continue outpatient care.  (TR 270.)

18        A Psychiatric Review Technique (PRT) form was completed by Jack A. Marks on

19   December 16, 2002.  (TR 302.)  The PRT noted an impairment, not severe, of a category

20   12.04 (Affective Disorders - Depression NOS).  (Id.)  Substance Addiction Disorder was not

21   noted.  (Id.)  The only functional limitation noted by the examiner was a mild difficulty in

22   maintaining social functioning. (TR 312.)

23        Plaintiff was seen at CODAC Behavioral Health Services for a comprehensive

24   psychosocial assessment in February, 2003.  (TR 324.)  The assessment noted diagnostic

25   impressions of major depression disorder and alcohol abuse.  (TR 331.)  Plaintiff's

26   psychiatric evaluation completed by Dr. Yarne, his treating physician, on March 25, 2003,

27   at CODAC noted a single episode of major depression disorder along with alcohol

28   abuse/dependency.  (TR 338.)  Plaintiff began treatment with Zoloft again.  (TR 347.)

Another PRT form was completed by Dr. Yarne on March 25, 2003.  This PRT met listing 12.04 for affective disorder, noting an inability to function with a relapse into severe drinking and interference with concentration, motivation and ability to complete tasks.  (TR 316-17.)  Substance Addiction Disorder was not noted.  (Id.)  Functional limitations were moderate restriction of activities of daily living; moderate difficulties in maintaining social functioning; frequent deficiencies of concentration, persistence or pace resulting in failure to complete tasks in a timely manner; and repeated episodes of deterioration of decompensation in work or work-like settings which cause the individual to withdraw from that situation or to experience exacerbation of signs and symptoms.  (TR 323.)  Dr. Yarne noted that his alcohol consumption was currently low.  (TR 317.)

Psychiatric progress notes from May, 2003, indicated that Plaintiff was drinking on April 16th and 17th.  (TR 351.)  Psychiatric progress notes indicate that Plaintiff was still depressed and was still drinking occasionally as of July 1, 2003.  (TR 348.)  It was recommended by Dr. Van Doren that Plaintiff get involved with AA or other CD support group.  (TR 348.)

After the ALJ's decision, Dr. Yarne submitted to the Appeals Council a clarification of her earlier statement:

> After reviewing my evaluation and considering my statement, I opine that Mr. Fiddler's primary diagnosis is severe depression.  It is also my opinion that the marked restrictions noted in my evaluation reflect his primary diagnosis with or without the contribution of low alcohol use.  Stated otherwise, if Mr. Fiddler completely abstained from alcohol use, he would still suffer the marked limitations reported in my evaluation.

(TR 358.)

Also after the ALJ's determination, Nancy Neman, a Certified Alcohol and Drug Abuse Counselor, conducted a two hour disability determination evaluation on Plaintiff on September 6, 2004, and concluded that Plaintiff suffers from Major Depression which renders him unable to function in the workplace, along with Social Phobia Disorder.  (TR

368.)  Ms. Neman noted Plaintiff's reports of low alcohol intake, and noted that even if Plaintiff stopped drinking altogether, it was her opinion that Plaintiff would still have the same limitations.  (TR 368.)  Ms. Neman completed a Mental Residual Functional Capacity Assessment, concluding that Plaintiff is markedly limited in almost all categories of ability. (TR 371-72.)

**C.     The Commissioner's Decision**

Following the first administrative hearing, the ALJ made the following findings on January 16, 2004:

> 1.   The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through the date of this decision.
>
> 2.   The claimant has not engaged in substantial gainful activity since the alleged onset of disability.
>
> 3.   The claimant has an impairment or a combination of impairments considered "severe" based on the requirements in the Regulations 20 CFR § 404.1520(b).
>
> 4.   The severity of the claimant's alcohol abuse meets the requirements of § 12.09B, Appendix I, Subpart P, Regulations No. 4 (20 CFR 404.1525).
>
> 5.   The undersigned finds the claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision.
>
> 6.   Alcohol abuse is a contributing factor material to a determination that the claimant is disabled for reasons set forth more fully above.
>
> 7.   When not abusing alcohol, the claimant's residual capacity is as follows: he can perform the exertional demands of light work; he is precluded from climbing ladder/rope/scaffolds; he can occasionally climb ramp/stairs and occasionally crouch and crawl; he must avoid concentrated exposure to extreme temperatures; avoid moderate exposure to fumes, odors, dusts, and avoid all exposure to machinery and heights.  He has no mental limitations.
>
> 8.   The undersigned has carefully considered all of the medical opinions in the record regarding the severity of the claimant's impairments (20 CFR 404.1527).

9.   The claimant is unable to perform any of his past relevant work (20 CFR § 404.1565).

10.  The claimant is an "individual closely approaching advanced age." On the alleged onset date he was a "younger individual" (20 CFR § 404.1563).

11.  The claimant has a "high school (or high school equivalent) education" (20 CFR § 404.1564).

12.  The claimant has no transferable skills from semi-skilled work previously performed as described in the body of the decision (20 CFR § 404.1568).

13.  Considering the types of work that the claimant is still functionally capable of performing in combination with the claimant's age, education and work experience, he could be expected to make a vocational adjustment to work that exists in significant numbers in the national economy.  Examples of such jobs include work as home care attendant.

14.  The medical evidence establishes that the claimant would not be disabled if he stopped abusing alcohol.  Therefore in accordance with § 105 of Public Law 104-21, enacted on March 29, 1996, the claimant is neither entitled nor eligible for disability payments under Title II of the Act.

15.  The claimant was not under a "disability" as defined in the Social Security Act, at any time through the date of the decision (20 CFR 404.1520(f)).

(TR 28-29.)

The ALJ rejected Plaintiff's subjective symptoms, finding that the medical evidence did not substantiate his contention.  (TR 26.)  The ALJ further noted that he acknowledged in August 2002 that he could walk a mile (See TR 157) and at the hearing stated that he supervised his grandsons daily while his daughter worked and that he also did grocery shopping and other activities of daily living consistent with his residual functional capacity.  (TR 26.)  The ALJ also noted that Plaintiff took no medication for his impairments.  (Id.)

The ALJ considered it particularly significant that Plaintiff admitted under oath that he last drank on April 16, 2003, though treatment notes indicated that he was "still drinking occasionally" on July 1, 2003.  (TR 26.)  The ALJ found that the medical evidence establishes that the Plaintiff meets the criteria of listing 12.09B in Appendix 1 to Part 404, 20 CFR Chapter III - specifically, his repeated abuse of alcohol has resulted in limitations

1   and was found by the ALJ to be a contributing factor material to the determination that

2   Plaintiff is disabled.  The ALJ found the rationale provided in *Ball v. Massanari*, 254 F.3d

3   817 (9th Cir. 2001) to be persuasive, and found that Plaintiff had failed to address, much less

4   meet, his burden that his alcohol abuse was not material to the determination of his disability.

5   (TR 26.)

6   **III- ISSUES**

7   **A.      Plaintiff's Position**

8           Plaintiff argues in his Motion for Summary Judgment that the Commissioner erred as

9   follows:

10          1.   By accepting the opinion of non treating physicians over the opinions of

11               a treating physician and in not accrediting the opinions of treating

12               physicians with sufficient weight.

13          2.   By failing to sustain his burden of establishing that there is other

14               work in the national economy that Plaintiff can perform.

15          3.   By determining the severity of Plaintiff's mental impairment and in

16               disregarding the combined effect of exertional and non-exertional

17               disabilities.

18          4.   By determining that alcohol abuse was a material factor in causing

19               Plaintiff's disability.

20  **B.      Defendant's Position**

21          Defendant asserts in response that:

22          1.   The ALJ reasonably relied on the opinions of the agency consultative

23               physicians and plaintiff is not disabled, absent his alcohol abuse.

24          2.   The ALJ properly found Plaintiff was not disabled, absent alcohol

25               abuse.

26          3.   Plaintiff did not meet listing 12.04 (affective disorders).

27          4.   The ALJ properly found that Plaintiff's alcohol abuse is material.

28

1    **IV.    DISCUSSION**

2    **A.    Standard of Review**

3           Pursuant to 42 U.S.C. § 423(d)(1)(A), an insured individual is entitled to disability

4    insurance benefits if he or she demonstrates, through medically acceptable clinical or

5    laboratory standards, an inability to engage in substantial gainful activity due to a physical

6    or mental impairment that can be expected to last for a continuous period of at least twelve

7    months.  The Ninth Circuit has stated that "'a claimant will be found disabled only if the

8    impairment is so severe that, considering age, education, and work experience, that person

9    cannot engage in any other kind of substantial gainful work which exists in the national

10   economy.'"  *Penny v. Sullivan,* 2 F.3d 953, 956 (9th Cir. 1993) (*quoting Marcia v. Sullivan,*

11   900 F.2d 172, 174 (9th Cir. 1990)).

12          The claimant has the burden to establish a prima facie case showing an inability to

13   engage in previous occupations.  *Thompson*, 665 F.2d at 939.  The burden then shifts to the

14   Secretary to show that other substantial work, for which the claimant is qualified, exists in

15   the national economy.  *Id.*  (citing *Hall v. Secretary of HEW*, 602 F.2d 1372, 1375 (9th Cir.

16   1979); *Cox v. Califano*, 587 F.2d 988, 990 (9th Cir. 1978)).

17          The court will set aside a denial of benefits only if the Secretary's findings are based

18   on legal error or are not supported by substantial evidence in the record as a whole.  *Kail v.*

19   *Heckler*, 722 F.2d 1496, 1497 (9th Cir. 1984) (citing *Sample v. Schweiker*, 694 F.2d 639, 642

20   (9th Cir.1982), *Thompson v. Schweiker*, 665 F.2d 936, 939 (9th Cir.1982));  42 U.S.C. §

21   405(g)).  In determining whether  there is substantial evidence, the Court must consider the

22   evidence as a whole, weighing both the evidence that supports and the evidence that detracts

23   from the Commissioner's conclusion.  *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

24          Substantial evidence is "more than a scintilla," *Richardson v. Perales*, 402 U.S. 389,

25   401 (1971), but "less than a preponderance."  *Sorenson v. Weinberger*, 514 F.2d 1112, 1119

26   n.10 (9th Cir. 1975);  *Desrosiers v. Secretary of Health and Human Servs.*, 846 F.2d 573, 576

27   (9th Cir. 1988).  Substantial evidence is "'such relevant evidence as a reasonable mind might

28   accept as  adequate  to  support  a  conclusion.'"   *Richardson*, 402 U.S. at 401 (quoting

1   *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). A denial of Social Security

2   benefits will be set aside if the Commissioner fails to apply proper legal standards in

3   weighing the evidence even though the findings may be supported by substantial evidence.

4   *Winans,* 853 F.2d at 644.

5       The Commissioner, not the court, is charged with the duty to weigh the evidence,

6   resolve material conflicts in the evidence and determine the case accordingly. *Id.*  However,

7   when applying the substantial evidence standard, the court should not mechanically accept

8   the Commissioner's findings but should review the record critically and thoroughly. *Day v.*

9   *Weinberger*, 522 F.2d 1154 (9th Cir. 1975).  Reviewing courts must consider the evidence

10  that supports as well as detracts from the examiner's conclusion. *Id*. at 1156.  Moreover, "if

11  the evidence can support either outcome, the court may not substitute its judgment for that

12  of the ALJ." *Matney,* 981 F.2d at 1019

13      Disability claims are evaluated pursuant to a five-step sequential process. 20 C.F.R.

14  §§404.1520, 416.920; *Baxter v. Sullivan,* 923 F.2d 1391, 1395 (9th Cir. 1991).  The first step

15  requires a determination of whether the claimant is engaged in substantial gainful activity.

16  20 C.F.R. §§ 404.1520(b), 416.920(b).  If so, then the claimant is not disabled under the Act

17  and benefits are denied.  *Id.*  If the claimant is not engaged in substantial gainful activity, the

18  ALJ then proceeds to step two which requires a determination of whether the claimant has

19  a medically severe impairment or combination of impairments.  20 C.F.R. §§ 404.1520(c),

20  416.920(c).  In making a determination at step two, the ALJ uses medical evidence to

21  consider whether the claimant's impairment more than minimally limited or restricted his or

22  her physical or mental ability to do basic work activities.  *Id*.  If the ALJ concludes that the

23  impairment is not severe, the claim is denied.  *Id*.  Upon a finding of severity, the ALJ

24  proceeds to step three which requires a determination of whether the impairment meets or

25  equals one of several listed impairments that the Commissioner acknowledges are so severe

26  as to preclude substantial gainful activity.  20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R.

27  Pt. 404, Subpt. P, App.1.  If the claimant's impairment meets or equals one of the listed

28  impairments, then the claimant is presumed to be disabled and no further inquiry is

1    necessary.  If a decision cannot be made based on the claimant's then current work activity

2    or on medical facts alone because the claimant's impairment does not meet or equal a listed

3    impairment, then evaluation proceeds to the fourth step.  The fourth step requires the ALJ

4    to consider whether the claimant has sufficient residual functional capacity ("RFC")[1] to

5    perform past work.   20 C.F.R. §§ 404.1520(e), 416.920(e).  If the ALJ concludes that the

6    claimant has RFC to perform past work, then the claim is denied.   *Id*.  However, if the

7    claimant cannot perform any past work due to a severe impairment, then the ALJ must move

8    to the fifth step, which requires consideration of the claimant's RFC to perform other

9    substantial gainful work in the national economy in view of claimant's age, education, and

10   work experience. 20 C.F.R. §§ 404.1520(f). 416.920(f).  At step five, in determining whether

11   the claimant retained the ability to perform other work, the ALJ may refer to Medical

12   Vocational Guidelines ("grids") promulgated by the SSA.  *Desrosiers,* 846 F.2d at 576-577.

13   The grids are a valid basis for denying claims where they accurately describe the claimant's

14   abilities and limitations.  *Heckler v. Campbell,* 461 U.S. 458, 462, n.5 (1983).  However,

15   because the grids are based on exertional or strength factors, where the claimant has

16   significant nonexertional limitations, the grids do not apply.  *Penny,* 2 F.3d at 958-959;

17   *Reddick v. Chater,* 157 F.3d 715, 729 (9th Cir. 1998). Where the grids do not apply, the ALJ

18   must use a vocational expert in making a determination at step five.  *Desrosiers,* 846 F.2d

19   at 580.

20   **B.    Medical Source Opinions**

21        The Ninth Circuit distinguishes among the opinions of three types of physicians:  (1)

22   those who treat the claimant (treating physicians);  (2) those who examine but do not treat

23   the claimant (examining physicians);  and (3) those who neither examine nor treat the

24   claimant (nonexamining physicians). *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995), as

25   amended (Apr. 9, 1996).

26

27        ――――――――――――――

28       [1]Residual functional capacity is defined as that which an individual can still do despite her limitations.  20 C.F.R. § 404.1545.

1    "Generally, a treating physician's opinion carries more weight than an examining

2    physician's, and an examining physician's opinion carries more weight than a reviewing

3    physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001) (citing *Lester*, 81

4    F.3d at 830 ;  20 C.F.R. § 404.1527(d).  In addition, the regulations give more weight to

5    opinions that are explained than to those that are not and more weight to the opinions of

6    specialists concerning matters relating to their specialty over that of nonspecialists. *Holohan*,

7    246 F.3d at 1202 (citing 20 C.F.R. §§  404.1527(d)(5) and 404.1527(d)(3)).  Under the

8    regulations, if a treating physician's medical opinion is supported by medically acceptable

9    diagnostic techniques and is not inconsistent with other substantial evidence in the record,

10   the treating physician's opinion is given controlling weight.  *Id.*  (citing 20 C.F.R. S

11   404.1527(d)(2);  Social Security Ruling (SSR) 96-2p).

12         More weight is given to a treating physician's opinion than to the opinion of a

13   nontreating physician because a treating physician "is employed to cure and has a greater

14   opportunity to know and observe the patient as an individual." *Andrews v. Shalala*, 53 F.3d

15   1035, 1041 (9th Cir. 1995) (quoting *Magallanes v. Bowen*, 881 F.2d 747, 751 (quoting

16   *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987))).  "Likewise, greater weight is

17   accorded to the opinion of an examining physician than a non-examining physician."

18   *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995)(citing 20 C.F.R. § 416.927(d)(1);

19   *Pitzer v. Sullivan*, 908 F.2d 502, 506 n.4 (9th Cir. 1990).

20         The ALJ may reject the opinion of a treating physician, whether or not controverted;

21   however, the ALJ may reject an uncontroverted opinion of a treating physician only for clear

22   and convincing reasons.  *Id.*, at 1041 (9th Cir. 1995).  To meet this burden, the ALJ must set

23   out a detailed and thorough summary of the facts and conflicting clinical evidence, state his

24   interpretation of the facts and evidence, and make findings.  *Magallanes v. Bowen*, 881 F.2d

25   747, 751 (9th Cir.  1989).  To reject the opinion of a treating physician which conflicts with

26   that of an examining physician, the ALJ must " 'make findings setting forth specific,

27   legitimate reasons for doing so that are based on substantial evidence in the record.' "

28   *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir.1987), (quoting *Sprague*, 812 F.2d at 1230);

*see also Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir.1983) (adopting this rule). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir.1986).

## C.   Remand/Reverse

The district court has discretion to remand for further proceedings or to award benefits. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir.1989).  Under *Harman v. Apfel*, 211 F.3d 1172 (9th Cir. 2000), when evidence has been improperly credited, the following test is used to determine when evidence should be credited and an immediate award of benefits directed:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Harman*, 211 F.3d at 1178 (quoting *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir.1996)). The *Harman* Court further notes that the third prong is really a subcategory of the second: "if the ALJ were not 'required to find the claimant disabled' upon crediting the evidence, then this certainly would constitute an 'outstanding issue . . . that must be resolved before a determination of disability [could] be made.'" *Id.* (quoting *Smolen*, 80 F.3d at 1292).

## D.   Analysis

To establish a mental impairment under the Social Security Regulations, the Commissioner looks to anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques.  *See* 20 C.F.R. § 404.1508 and 404.404.1520a.  The Commissioner must specify the symptoms, signs and laboratory findings that substantiate the presence of the impairment and document these findings.  *See* 20 C.F.R. § 404.1520a (b)(1).   The Commissioner must then rate the degree of functional limitations resulting from the impairments, and, if the impairment is severe, determine if the impairment meets or is equivalent in severity to a listed mental disorder

1  (12.00C through 12.00H of the Listing of Impairments in appendix 1).  *See* 20 C.F.R. §

2  404.1520a(b)(2).   The analysis thereafter becomes somewhat more complicated when

3  evidence of alcohol abuse by a claimant becomes a factor in the equation.

4          In 1996 Congress enacted the Contract with America Advancement Act which

5  removed alcoholism as a basis of eligibility for both Disability Insurance Benefits and

6  Supplemental Security Income.  Pub. L. No. 104-121, 110 Stat. 847 (1996), amending 42

7  U.S.C. § 422 and 42 U.S.C. § 1382c.  Under the new enactment, "an individual shall not be

8  considered to be disabled . . . if alcoholism or drug addiction would (but for this

9  subparagraph) be a contributing factor material to the Commissioner's determination that the

10  individual is disabled.  42 U.S.C. § 423(d)(2)(C).

11          Social Security Regulations insert this consideration just after step two of the five step

12  analysis, essentially rendering it a six-step analysis when alcohol or drugs become a potential

13  contributor to the disability determination.   "If we find that you are disabled and have

14  medical evidence of your drug addiction or alcoholism, we must determine whether your

15  drug addiction or alcoholism is a contributing factor material to the determination of

16  disability."  20 C.F.R. § 404.1535(a) The key factor the agency examines in determining

17  whether alcoholism is a contributing factor material to the determination of disabiliy is

18  "whether we would still find you disabled if you stopped using drugs or alcohol."  20 C.F.R.

19  § 404.1535(b)(2).  This is often referred to as the "materiality determination."  The Ninth

20  Circuit affirmed that this inquiry takes place only after the ALJ finds that the claimants

21  impairments are severe at step two of the five-step analysis. *See Ball v. Massanari* 254 F.3d

22  817, 822 (9th Cir. 2001).

23          The Ninth Circuit stated, although in dicta, that in materiality determinations, the

24  claimant bears the burden of proving that his alcoholism or drug addiction is not a

25  contributing factor material to his disability determination. *Id.* at 821 (citations omitted).

26          In this case, the ALJ found, at step two of the five-step analysis, that the evidence

27  confirmed the following medically determinable "severe" impairments: alcohol abuse, status

28

post lobectomy, secondary to emphysema; status post right carpal tunnel syndrome; status post C6 fracture; and depression.  (TR 24.)

The ALJ then made the following determination:

> The medical evidence establishes that the claimant meets the criteria of listing 12.09B in Appendix 1 to Part 404, 20 CFR Chapter III.  Specifically, his repeated abuse of alcohol has resulted in the following limitations: moderate restrictions in daily living activities; moderate difficulties in maintaining social functioning; and marked difficulties in maintaining concentration, persistence or pace and repeated episodes of decompensation.  I find his ongoing abuse of alcohol to be a contributing factor material to the determination that he is disabled, thereby making him nonentitled and ineligible to receive disability benefits under Title II of the Act . . ..  I find the rationale provided in *Ball v. Massanari*, 254 F.3d 817 (9th Cir. 2002), to be persuasive and have applied it in this case.  Under the circumstances at bar, I find that the claimant has failed to address — much less meet — his burden that his alcohol abuse was not material to the determination of his disability.

(TR 26.)

The ALJ subsequently found that when Plaintiff is not abusing alcohol, he has no mental impairments.  (Id.)

Following the ALJ's decision, Plaintiff submitted to the Appeals Council the letter of clarification from Dr. Yarne, *supra* at p. 9-10,  (TR 358) and a letter from Nancy Neman, an Arizona Licensed Professional Counsel and a Certified Alcohol and Drug Abuse Counselor. (TR 368-370.)

The Appeals Council upheld the ALJ's decision, finding that the additional information submitted by Plaintiff did not provide a basis for changing the ALJ's decision. (TR 7.)

It is the recommendation of this Court that this case be remanded for reconsideration by the Commissioner in a manner to correct the following errors and deficiencies noted in this report as follows.

The Commissioner failed to support the decision with substantial evidence.  In order for the decision to have been supported by substantial evidence, the Commissioner must have

1  had substantial evidence both for the conclusion that Plaintiff was still drinking and for the

2  determination that he would no longer be disabled if he stopped drinking.

3      Historically, there is evidence, and Plaintiff admits, that he has a history of drinking

4  and was drinking occasionally as recently as July 1, 2003.  There is substantial evidence that

5  Plaintiff was still drinking at the time of the hearing.

6      The evidence suggests, however, that as recent as February 7, 2000, Plaintiff's

7  drinking did not contribute in any significant was to any functional limitations for Plaintiff,

8  despite an Axis I diagnosis of Alcohol Abuse by Dr. Glassman.  (TR 243-247.)   Similarly,

9  Dr. Girardi completed a PRT on Plaintiff in February, 2002, and while noting an impairment,

10  not severe, of Category 12.09 Substance Addiction Disorders, noted only slight limitations

11  and no episodes of deterioration.  (TR 250, 257.)

12      Following his attempted suicide in March, 2002, he was diagnosed with depressive

13  disorder and alcohol abuse.  (TR 268.)  His substance abuse history indicated he takes one

14  beer at least daily at least once a week.  (Id.)  Notably, he was treated only for depression and

15  not alcohol abuse while at Palo Verde Hospital, although it appears he was given outpatient

16  instruction to avoid alcohol upon discharge.

17      Thereafter, it seems, Plaintiff began a period of heavy drinking.  From May, 2002 to

18  September, 2002, Plaintiff's psychiatric evaluations indicate that he was in California

19  drinking and living on the streets.  (TR 334.)  This period of heavy drinking ended upon his

20  return to Arizona in September, 2002.  (TR 317.)

21      In November, 2002, Dr. Suarez noted a social history of drinking "occasional beers"

22  but also noted that, regarding his depression, he "appeared to be pretty much compensated

23  at this point."  (TR 290.)

24      Dr. Marks, in December, 2002, completed yet another PTR, noting an impairment, not

25  severe, of a Category 12.04 Affective Disorder, Depression NOS, with only a mild limitation

26  in maintaining social functioning.  (TR 302, 312.)  Notably, Dr. Marks did not find any

27  substance addiction disorder.  (Id.)  Other than five lines of notes at the end of Dr. Marks'

28  PRT, there is nothing in the report to indicate the basis for Dr. Marks' conclusion.

1       Finally, the PRT submitted by Dr. Yarne in March, 2003, indicates a Category 12.04

2   Affective Disorder.  (TR 316.)  The Reviewer's Notes, as best read, indicate "Severe episode

3   major depression after loss of [girlfriend] 1 [year] ago.  Unable to function.  Loss of interest,

4   anhedonia, sadness relapsed into severe drinking since return to AZ in 9/02 moderate alcohol

5   currently low.  Depression persists.  Depression interferes with concentration, motivation and

6   ability to complete tasks."  (TR 317.)  Dr. Yarne noted several functional limitations.  (TR

7   323.)  Dr. Yarne's medical records follow her PRT assessment.  (TR 324-351.)

8       In looking at the evidence as a whole, it does not appear that there is substantial

9   evidence that supports the ALJ's decision.  The evidence as a whole indicates that Plaintiff

10  has a long history of alcohol abuse that did not cause any mental impairment, at least prior

11  to Plaintiff's attempted suicide.  Subsequently, Plaintiff suffered a severe depressive episode

12  followed by a relapse into heavy drinking and since that time a continued depression and

13  some degree of functional limitation and some degree of moderate to low alcohol intake.  It

14  is not clear what evidence the ALJ relied on in reaching his conclusion that, absent alcohol

15  use, Plaintiff would have no mental impairment.  There is no evidence apparent in the record

16  that indicates that Plaintiff's mental impairments are the result of alcohol abuse.  In fact, the

17  ALJ did not point to any evidence in the record to support his conclusion, rather, stated it as

18  a fact and proceeded to the next step in the determination. As discussed below, this Court

19  cannot affirm an agency's decision on grounds the agency does not invoke in making its

20  decision.   *See Pinto v. Massanari*, 249 F.3d 840 (9th Cir. 2001).   Regardless, the

21  Commissioner's decision is not supported by sufficient evidence.  In fact, the evidence

22  submitted to the Appeals Council supports the opposite conclusion, that were Plaintiff to

23  cease consuming alcohol, he would still be disabled.

24      The Commissioner erred by finding that Dr. Yarne's opinion did not provide a basis

25  for changing the ALJ's decision.

26      Although the Appeals Council declined to review the decision of the ALJ, it reached

27  this ruling after considering the case on the merits; examining the entire record, including the

28  additional material; and concluding that the ALJ's decision was proper and that the additional

1    material failed to provide a basis for changing the ALJ's decision.  For these reasons, this

2    Court considers both the ALJ's decision and the additional material submitted to the Appeals

3    Council. *Ramirez v. Shalala*  8 F.3d 1449, 1451-52 (9th Cir. 1993) (citing *Bates v. Sullivan*,

4    894 F.2d 1059, 1063-64 (9th Cir.1990) (reviewing de novo the Appeals Council's refusal to

5    review the decision of the ALJ where the claimant presented new material to the Appeals

6    Council after the hearing before the ALJ).

7         Pursuant to 20 C.F.R. § 404.970, the Appeals Council shall consider new and material

8    evidence, if it relates to the period on or before the date of the ALJ's hearing decision.   The

9    Appeals Council shall evaluate the entire record including the new and material evidence,

10   and then review the case if it finds that the ALJ's action, findings, or conclusion is contrary

11   to the weight of the evidence currently of record.

12        As noted above, in a disability case, greater weight is afforded to the opinion of a

13   treating physician than to that of a non-treating physicians; when another doctor's opinion

14   contradicts the opinion of a treating physician, the Commissioner can disregard the latter

15   only by setting forth " 'specific, legitimate reasons for doing so that are based on substantial

16   evidence in the record.' " *Ramirez v. Shalala*, 881 F.2d at 751 (1989) (citations omitted).  In

17   this case, the Commissioner failed to provide a reason, much less a "specific, legitimate"

18   reason based on substantial evidence, for disregarding Dr. Yarne's opinion.  Furthermore,

19   since Dr. Yarne and Nancy Neman are the only experts to give an opinion on the materiality

20   of Plaintiff's alcohol consumption,  it is not even clear that the Commissioner rejected Dr.

21   Yarne's opinion in favor of anything other than the Commissioner's own speculation.

22        Plaintiff's lack of credibility is not a valid basis for rejecting Dr. Yarne's opinion. See

23   *Edlund v. Massanari*, 253 F.3d 1152, 1159 (holding that an ALJ could not rely on a

24   claimant's lack of ovarall credibility to reject the entirety of a psychologists report, including

25   portions that the psychologist deemed reliable.)  Especially in this case, when it is apparent

26   that Dr. Yarne was fully aware of Plaintiff's continued use of alcohol.  Furthermore, if the

27   Commissioner wished to discredit Dr. Yarne's opinion based on Plaintiffs' credibility, this

28   must have been asserted in the findings of either the ALJ or the Appeals Council.  This Court

1   cannot affirm the denial of benefits on a ground not invoked by the Commissioner in denying

2   the benefits originally.  *See Pinto v. Massanari*, 249 F.3d 840, 847-48 (2001).

3          Defendant asserts that Dr. Yarne's opinion is not supported by objective medical

4   evidence.  This is contrary to the evidence of record.  Dr. Yarne's handwritten notes as well

5   as treatment notes from other physicians and therapists at CODAC Behavioral Center were

6   provided with Dr. Yarne's assessment.  (TR 324-338.) Her assessment does not appear to be

7   at odds with the treatment notes.  Certainly, in cases of mental impairment, it cannot be

8   expected that the same level of objective medical physical and laboratory tests that

9   accompany physical diagnosis will be available to support a psychological diagnosis.  Dr.

10  Yarne's notes and the notes from CODAC are consistent with Dr. Yarne's assessment and,

11  unlike the stage agency examinations, were made with an eye towards treatment of the

12  Plaintiff, not towards the resolution of Plaintiff's disability case.  The Commissioner failed

13  to provide specific, legitimate reasons for rejecting Dr. Yarne's PRT or Dr. Yarne's opinion

14  on the ultimate issue - whether Plaintiff would still be disabled if he were to abstain from

15  alcohol.

16         Defendant asserts that the "ALJ properly rejected Dr. Yarne's opinion based on

17  inconsistencies between her records and the overall evidence, as well as her failure to address

18  the issue of Plaintiff's functioning without alcohol (TR 25-26.)" Defendant is mistaken,

19  however, as the ALJ did not note any inconsistencies between Dr. Yarne's record and the

20  overall evidence.  Defendant states that Dr. Yarne provided ambiguous evidence about

21  Plaintiff's alcoholism, noting that "in 2002 Plaintiff had relapsed into severe drinking, but

22  that his drinking had reduced from moderate to low."  (Defendant's Reply, p.2.)  That is not

23  an ambiguous statement, but a historically accurate one.  It is evident from the record, if it

24  is actually read in its entirety, that in May 2002, Plaintiff drank heavily, while in California,

25  then, upon his return to Arizona, in September 2002, decreased the amount of drinking,

26  apparently from a moderate amount to, at the point of Dr. Yarne's assessment with Plaintiff,

27  a low amount.  The ALJ simply summarized Dr. Yarne's opinion in one paragraph, and gave

28  no reasons for rejecting her opinion, other than his later statement that Plaintiff's disabilities

are due to his alcohol abuse.  Furthermore, the Plaintiff did address the issue of Plaintiff's functioning without alcohol, but the Appeals Council failed to take the issue into consideration.  That Dr. Yarne did not diagnose alcoholism in her PRT, yet diagnosed alcohol dependency, might have been a reason to properly reject the opinion of Dr. Yarne, yet, as noted above, must actually be stated by the ALJ in order for this Court to affirm on those grounds.  Neither the ALJ nor the Commissioner stated such an opinion in their decisions.

Defendant argues that, most importantly, the ALJ properly did not rely on Dr. Yarne's opinion because she did not address the material issue.  Dr. Yarne did just that, however, in her letter to the Appeals Council, and despite the "materiality" of the issue, it was disregarded, as was Ms. Neman's opinon.

The Commissioner also rejected Nancy Neman's opinion, that Plaintiff's alcoholism was in remission at the time and that he would be disabled due to Major Depression and Social Phobia Disorder whether he is drinking alcohol or not (TR 369), without expressing the rationale for rejecting this examining expert's opinion[2].

Defendant argues that Ms. Neman is not an "acceptable medical source" pursuant to 20 C.F.R. § 404.1513(a), however, Ms. Neman is an allowable source pursuant to 20 C.F.R. § 404.1513(d), and, in this instance, appears uniquely qualified to address the issue at hand.

The ALJ specifically noted that Plaintiff failed to address his burden that his alcohol abuse was not material to the determination of his disability.  Despite this glaring deficiency,

---

[2]    Defendant asserts that the ALJ properly considered and addressed counselor Neman's opinion in his decision.  (Cross-Motion for Summary Judgment and Opposition, p.2.)  This is an impossibilty, however, as Ms. Neman's letter was written on September 6, 2004, more than seven months after the ALJ's decision, and submitted to the Appeals Council, not the ALJ, where it was considered and found to not provide a basis for changing the ALJ's decision. (TR 7.) Thus, the Defendant cannot argue that the ALJ properly rejected Ms. Neman's functional assessments (See Cross-Motion for Summary Judgment and Opposition, p. 5.), as the ALJ never had a chance to address the assessment in the first instance.

1   the Appeals Council, however, did not address the effect this new evidence had on Plaintiff's

2   duty, under *Ball*, *supra*, to meet that burden.  The ALJ's opinion indicates that there is a

3   strong possibility that the ALJ's opinion might have been different had this new evidence

4   been available to the ALJ at the time of the hearing.  This was completely disregarded by the

5   Appeals Council.

6          Finally, it is not evident that the ALJ applied the correct legal standard.  The ALJ

7   stated that Plaintiff's "repeated abuse of alcohol" resulted in several functional limitations.

8   The ALJ then stated that his "ongoing abuse of alcohol" was a contributing factor material

9   to the determination that he is disabled.  The ALJ subsequently found Plaintiff's RFC when

10  not abusing alcohol to include no mental impairments.  It is not clear, because the ALJ stated

11  that Plaintiff's "repeated abuse of alcohol" resulted in functional limitations, that the ALJ

12  appropriately differentiated disabilities resulting from long term alcohol abuse as opposed

13  to transient disabilities resulting from acute alcohol abuse, the latter being properly

14  discounted in the materiality determination.  Again, another reason to remand the case to the

15  ALJ for further consideration consistent with this report.

16                                    **Recommendation**

17         The District Court has the discretion to remand the case for further proceedings or for

18  an immediate award of benefits.  In this case, where the ALJ did not have the opportunity to

19  consider the entirety of the evidence, and a finding of benefits is not evident at this time, the

20  Magistrate Judge recommends that the appropriate remedy is to remand the case to the

21  Commissioner of Social Security with instruction to require the ALJ who was present at the

22  hearing to review the evidence de novo, including the additional evidence submitted after the

23  hearing, taking such further evidence as is required to determine Plaintiffs eligibility for

24  benefits under the current law, and making appropriate findings consistent with this report.

25  //

26  //

27  //

28  //

1

**V.     CONCLUSION**

2      For the foregoing reasons, this Court recommends that the District Judge, after its

3 independent review, GRANT Plaintiff's Motion for Summary Judgment (Document # 8),

4 DENY the  Defendant's Motion for Summary Judgment (Document # 16 ), and remand the

5 case for further proceedings consistent with this report.

6      Pursuant to Title 28 U.S.C. § 636(b), any party may serve and file written objections

7 within 10 days of being served with a copy of this Report and Recommendation.   If

8 objections are not timely filed, they may be deemed waived.  If objections are filed, the

9 parties should use the following case number: CIV 05-088-TUC-JMR.

10     DATED this 24th day of February, 2006.

11

12

13                          Bernardo P. Velasco
                           United States Magistrate Judge

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28